**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**(COLUMBUS DIVISION)**

| | |
|---|---|
| CHARLES and GINA PLEDGER, on behalf of themselves and all others similarly situated, | Case No. 2:16-cv-938 |
| Plaintiffs, | **COMPLAINT** (Class Action - Product Liability) |
| v. | |
| WINDSOR WINDOW COMPANY d/b/a WINDSOR WINDOWS AND DOORS, and WOODGRAIN MILLWORK, INC., | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiffs, Charles and Gina Pledger ("Pledgers" or "Plaintiffs"), by and through their undersigned counsel, individually and on behalf of all other persons and entities similarly situated, allege against Defendants, Windsor Window Company d/b/a Windsor Windows and Doors ("Windsor") and Woodgrain Millwork, Inc. ("Woodgrain") (collectively, "Defendants"), the following facts and claims upon knowledge as to matters relating to themselves and upon information and belief as to all other matters and, by way of this class action Complaint, aver as follows:

## INTRODUCTION

1.      This is a proposed class action brought by Plaintiffs, individually and on behalf of the below-defined Classes against Defendants, to obtain damages arising from and relating to their purchase and installation of defective wood clad windows ("Windows") designed, manufactured, advertised, sold, and distributed by Defendants.

2. This class action arises out of Defendants' design, manufacture, advertisement, sale, and distribution of Windows that leak, deteriorate, degrade, and otherwise prematurely fail. Defendants' Windows fail to comply with the building codes in place at all times relevant, and industry standards such as AAMA, ASTM, WDMA, I.S.4, and others, and have also breached their express and implied warranties with respect to their Windows.

3. At the time the Windows leave the manufacturing plant, they contain a latent defect that allows water to infiltrate and pass through the Windows' frame corners, glazing pocket, and aluminum cladding, leading to deterioration of the wood components of the window and water and air leakage into the interior of the home damaging the interior wall cavity, trim, drywall, framing components, and other property.

4. The wood preservative applied to the wood components of the Windows is also inadequate in its composition and application, further accelerating the rate of the deterioration.

5. Plaintiffs, Class Members, or their contractors would not have purchased or installed the Windows if they knew of such defects or that their Windows would prematurely fail.

6. Defendants' acts and omissions in connection with its design, manufacture, warranty, sale and delivery of these defective Windows constitute breach of express warranty, breach of contract and the implied covenant of good faith and fair dealing, fraudulent misrepresentation, fraudulent concealment, and strict liability.

7. Defendants have repeatedly failed to comply with the terms of their warranties by distributing defective Windows, and also by denying or otherwise failing to remedy or repair defective Windows in Plaintiffs and Class Members' homes.

8.     Defendants' failure to comply with the terms of the warranty have made the Windows less valuable, notwithstanding the loss of value resulting from the latent defects leading to premature product failure.

9.     Plaintiffs, Class Members, and contractors would have paid significantly less for the Windows, or not purchased them at all, had they known Defendants would not have honored their warranty, or that the products contained defects and caused severe damage to other property.

## PARTIES

10.     Plaintiffs were and are, at all relevant times hereto, residents and citizens of the State of Ohio.  Specifically, Plaintiffs own a home at 6450 Lake Trail Drive, Westerville, Delaware County, Ohio.  The Windows were purchased at the time of construction of their home, and installed in late 2002.

11.     Defendant Windsor was and is a company organized and existing under the laws of the State of Idaho, with a principal place of business in the State of Iowa. At all times relevant herein, Windsor transacted and conducted business in Ohio.

12.     Defendant Woodgrain was and is a corporation organized and existing under the laws of the State of Oregon, with a principal place of business in the State of Idaho.

13.     At all times relevant herein, Woodgrain was the parent company of Windsor, provided Window components and materials to Windsor, and jointly transacted and conducted business in Ohio.

14.     Defendants used, commingled, and combined their resources to design, develop, manufacture, market, and sell the Windows at issue.

3

15.     At all times relevant herein, the Defendants were actual and/or *de facto* joint ventures in the design, development, manufacture, marketing, and sales of the Windows at issue.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act, as there is complete diversity of citizenship and corporate domicile; the amount in controversy exceeds $5,000,000.00, without interest and costs; and there are at least 100 members of the proposed Class.

17.     Venue is proper pursuant to 28 U.S.C. § 1391, as Plaintiffs reside in this district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district. At all times relevant herein, Defendants conducted and/or transacted business in this district and, therefore, are subject to personal jurisdiction in this district and reside here for venue purposes.

## THE WINDOWS

18.     This case arises from Defendants' defective design and manufacture of wood clad Pinnacle and Legend Series Windows, and their failure to disclose defects to purchasers and owners of the Windows, or to comply with the terms of the Windows' warranties.

19.     Upon information and belief, both Series share the same or similar relevant design functions, manufacturing process, and wood preservative treatment.

20.     Both Series prematurely fail in the same or similar manner, and resulting in the same or similar damage throughout the Windows.

21.     Specifically, as a result of the defects, the Windows have and will continue to prematurely fail.  The wood rot has and will progress to other wood components in the window

4

and adjoining structure, as well as permit air and water leakage due to loss of structural integrity unless the Windows are repaired and replaced. The leakage through window frame corners, at the glazing pockets, and other areas has and will cause damage to areas adjacent to the window, including the wall cavity, trim, framing, drywall, and other property in the home.

22. Given the latent nature of the defect and damage, the deterioration occurs over such a period of time that it does not become visible until it has advanced to irreparable damage, and is also masked by cladding and window components (i.e. back dam, meeting rail, trim, etc.). It is likely that, although the premature failure begins during the warranty period, the wood deterioration will not manifest itself until after Defendants' warranty has expired.

23. At all times relevant hereto, Defendants and their agents held themselves out to Plaintiffs, Class Members, the construction industry, and the public at large as manufacturing superior, quality, and durable products, including the subject Windows.

24. At all times relevant herein, Defendants were engaged in the marketing, sale, supply and delivery of windows in the State of Ohio and across the United States.

25. At the time of sale, Windsor warranted that each Window was fit for the ordinary purpose for which such goods were used and were free from defects in materials and workmanship.

26. At all times relevant herein, including at the time the Windows were sold to Plaintiffs and Class Members, the Windows are moveable goods as defined by the Uniform Commercial Code. The Windows are shipped as individual units by the manufacturer to the project, and later installed in the home. Windows are capable of being removed from the home after construction.

5

27.     Unknown to Plaintiffs and Class Members, the Windows are defective and fail to perform at Plaintiffs' residence and at Class Members' residences by permitting water intrusion through unsealed or inadequately sealed areas of the Windows' frames and sashes, and into the interior of the residences.

28.     The Windows are defective and prematurely failing at Plaintiffs' residence and at Class Members' residences by permitting water to penetrate the wood components of the Windows, wherein it is absorbed by wood members, and causes rot, premature degradation, leaking, and failure of the wood.   The wood preservative applied is defective in its composition and application, which fails to protect the wood components and accelerates the rate of deterioration.

29.     The defects in the Windows lead to failure well in advance of the expected useful lives of the Windows, under both the limited 10-year warranty period and industry standard of 20-25-years.

30.     Degradation of the wood components permits additional water and air infiltration into the home in an accelerated cycle.

31.     The water intrusion and above-described damage resulting from the defective Windows constitutes "occurrences" resulting in "property damage" to property other than Defendants' "product" as those terms are commonly defined and used in the typical commercial general liability insurance policy.

32.     The above-described defects are due to design, engineering, and manufacturing errors, all of which should have been within Defendants' expertise.

33. Because the Windows prematurely fail and permit water and air intrusion, they violate the building codes, industry and testing standards, and amount to a breach of the Windows' warranties.

34. The defects exist at the time the Windows leave the factory.

35. Failure of the Windows begins upon installation and continues during repeated and prolonged exposure to weather.

36. Because of their touted expertise in window design and manufacturing, Defendants knew or should have known that the defects were present at the time the products left their control.

37. Defendants represented to Plaintiffs and the public at large that water intrusion is caused by other sources. In fact, Defendants' website states that only "[R]arely, a product may be defective."

38. Defendants knew or should have known the Windows would prematurely fail, but did not adequately correct the defective design or manufacturing process which leads to damage in the homes in which the Windows are installed.

39. Defendants failed to warn purchasers, installers or users of the above-described risks of failures, which would have been material and instrumental in the decision to purchase the Windows.

40. The purchase of Defendants' Windows comes with a written express warranty, which forms part of the basis of the bargain between Defendants and the purchaser.

41. The Windows' written express warranty also forms part of the basis of the bargain between the seller of the home and homebuyers, including Plaintiffs and Class Members.

42. The typical purchase agreement for the sale and/or construction of Class Members' homes likely contains one or more provisions transferring or assigning manufacturers' and suppliers' warranties to them at the time of purchase or conveyance.

43. The transfer or assignment of the manufacturers' and suppliers' warranties, which would include the Window warranties, forms part of the basis of the bargain at the time Plaintiffs and Class Members purchased their homes.

44. Even where a manufacturer or supplier warranty transfer provision is not present, the average homeowner expects, at the time of purchase, his or her home comes with such warranties, including a window warranty against defects.

45. Defendants also expressly and implicitly represent in documents available to the public that their warranty is part of the product being sold, and that the written warranties apply to the owners of the homes containing the Windows.

46. Defendants' warranty expressly applies to subsequent purchasers.

47. Defendants' warranties explicitly apply to future performance, and Defendants represent in their express warranty and documents available to the public that the Windows will be free from defective materials and workmanship for at least 10 years.

48. Defendants' warranties expressly provide that adequate repair or replacement for defective components, including cladding, glazing pockets, frame corners, wood components, and other components, will be made pursuant to the 10 year warranty.

49. Plaintiffs and putative Class Members relied upon these warranties and other representations when they purchased the Windows and/or structures containing the Windows.

50.     Plaintiffs and putative Class Members reasonably expected and expect that the Windows would last a minimum of 20-25 years, an expectation which is supported by industry standards.

51.     Plaintiffs and putative Class Members reasonably expected that any repairs or replacements under the warranty would be adequate, and that replacement product would not be defective.

52.     Defendants' representations, expressly and impliedly, through their website, brochures and marketing materials, that the Windows are suitable and free from defects, were intended to, and likely did, affect the market by inducing builders, contractors, suppliers and others to purchase the Windows.

53.     Plaintiffs and other homeowners across the United States put defendants on notice of defects and resultant damage in the Windows.

54.     Defendants' shipping of the Windows with actual or constructive knowledge of the defects, or with negligent or reckless disregard of the presence of defects, constituted a breach of their express warranty, and makes the limitations of the express warranty unconscionable in all respects, and, therefore, void *ab initio*.

55.     The published written warranties include the following unconscionable limitations and exclusions:

     a)     The warranty requires that the homeowner be able to identify a "defect" in the Windows;

     b)     The warranty is ambiguous with regard to coverage of components;

     c)     The warranty limits coverage of wood warping;

     d)     The warranty excludes damages caused by design of the Windows;

e)   The warranty excludes the cost of labor for repair or replacement arising from defects;

f)   The warranty excludes the cost of repainting or refinishing arising from defects;

g)   The warranty places unreasonable time limitations on notifying Defendants of defects, including Defendants' unilateral determination of when the homeowner should have "reasonably" discovered a defect;

h)   The warranty shortens the warranty period by beginning from the date of manufacture, regardless of when the Window is purchased, installed and put into use and operation;

i)   The warranty gives Defendants the final determination of whether or not a defect exists;

j)   The warranty potentially requires payment of a field service fee for inspecting the Windows;

k)   The warranty requires the homeowner to produce information that may not be accessible or otherwise readily understandable, including IGU and/or glass codes;

l)   The warranty purports to limit Defendants' responsibility by providing a remedy of repair, replacement, or refund a portion of the original purchase price, solely at Defendants' option;

m)   The warrant purports to exclude any liability for consequential, incidental, or punitive damages;

n)   The warranty purports to exclude any liability in excess of the original purchase price of the product;

o)   The warranty limits repair and replacement parts and products to the remainder of the original warranty period;

p)   The warranty purports to disclaim all warranties, expressed or implied, including implied warranties of merchantability or fitness for a particular purpose;

q)   The warranty purports to disclaim performance ratings identified by the AAMA and NFRC ratings affixed to the Windows by the Defendants;

r)    The warranty purports to disclaim any obligation to comply with building standards, including applicable building codes, and industry and testing standards;

s)    The warranty purports to allow Defendants to inconsistently apply the warranty at their own discretion;

t)    The warranty's 10-year limitation is in and of itself unconscionable;

u)    The warranty states it is voided by a number of conditions unilaterally determined by Defendants, including "improper" installation; and

v)    In all other ways revealed during discovery, and/or otherwise determined at trial.

56.    The warranty is non-negotiable and is so one-sided that no reasonable person would ever knowingly agree to its terms if properly disclosed.

57.    Further, Defendants have engaged in a pattern and practice of failing to honor or discouraging warranty claims by representing that damage is not caused by the Windows themselves, by failing to respond to homeowners at all, by requiring the owner to pay for an inspection of the Windows, by requiring the homeowner to pay for all costs associated with repair or replacement of the Windows, including the labor for such repair or replacement, and/or by denying claims where the damage is discovered outside of the 10-year warranty regardless of whether the damage began to manifest within the warranty period.

58.    The above described pattern and practice by Defendants has the effect of pushing warranty claims past the expiration date, discouraging defect claims, and/or continuing to pursue remedies through Defendants.

59.    Moreover, during contact with Plaintiffs and Class Members, Defendants concealed their knowledge of the defects in the Windows in the Class Members' residences and otherwise failed to acknowledge that the Windows themselves cause the damage to the Windows and the homes.

60.     As Defendants have known or should have known of their Windows' defects and have failed to timely honor their warranty, the warranty has failed its essential purpose and the limitations therein are null and void, and Plaintiffs and Class Members have otherwise not received the value for which they, their builders, or their contractors bargained for at the time the Windows were purchased or transferred to homeowners.

61.     The defects in Defendants' Windows also make the Windows unfit for their intended use.

62.     Given the leaking, rotting, premature degradation and failure of the Windows, the Windows have a reduced life expectancy and require unexpected maintenance, repair, and replacement by Plaintiffs and Class Members.

63.     The Windows' defects and resultant damages have caused a diminution in the value of the homes.

64.     The Plaintiffs and Class Members have and will suffer a loss of use related to the Window related damage, and repair or replacement that has or will occur at the Windows.

65.     Defendants knew or should have known that the Windows did not and do not satisfy industry or testing standards.

66.     Defendants knew or should have known that the Windows were not a suitable exterior building product, in that they were not capable of withstanding the weather conditions in which the Windows were distributed and installed.

67.     Defendants knew or should have known that their Windows were defective in design and manufacture; not fit for their ordinary and intended use; not merchantable; and failed to perform in accordance with the advertisements, brochures, representations, marketing materials, and warranties disseminated by Defendants.

68.     The Windows failed to conform to the reasonable life, performance, or other expectations of ordinary consumers such as Plaintiffs and Class Members.

69.     Because the Windows leak, and allow for increased water absorption, water penetration, rot, degradation, cause reduced life expectancy, and otherwise fail, the Windows are neither durable no suitable for use as an exterior building product.

70.     The above-described defective conditions of the Windows and resultant damages are present in Plaintiffs' home and are common among Class Members.

71.     Plaintiffs and Class Members have been proximately harmed by the Windows' above-described defective condition(s) and Defendants' above-described conduct.

## PLEDGERS' EXPERIENCE

72.     In 2002, the Pledgers began construction of their home in Westerville, Ohio. Forty-nine (49) wood clad, Pinnacle Series Windsor windows were purchased and installed in late 2002.  Construction of the home was completed in January of 2003, at which time the family moved in.

73.     At the time the windows were selected for purchase, the Pledgers' contractor offered the windows as an "upgrade" to other window products available.

74.     The Pledgers relied on the contractor's statements regarding the quality and durability of the windows and the Defendants' various documents and other materials, including the warranty, in selecting the windows for their home.

75.     The Pledgers constructed and paid for the home containing Defendants' windows based upon the representations of the contractor, and belief that the Windows were superior products, the Windows were free of defects, the Windows were suitable for environments like

theirs in Ohio, and that the Windows were compliant with all applicable building codes and industry standards.

76.     Unknown to the Pledgers, the Windows were defective in that they allowed moisture, water, and air to penetrate through the Window components, causing moisture, mold, fungal growth, staining, and water damage to the Windows themselves and to adjacent building components such as the wall cavity, exterior sheathing, interior trim, drywall, and other framing components.

77.     The characteristics of the Window defects were present in the Windows when they left the factory, and were part of the Window by design and manufacture.

78.     The damage began to manifest during the warranty period; however, it was latent damage masked by the window cladding, sill, jamb liners, wall cavity, exterior cladding and other components.

79.     For years, unbeknownst to them, the Pledgers' windows and home was damaged by wood deterioration and other water-related damage to the Windows, adjacent building components, and to their personal property.

80.     In or about November of 2013, Mrs. Pledger noticed staining on the front of their home in the vicinity of a second story window. The Pledgers believed the staining was only cosmetic, normal wear and tear that indicated the home was due to be painted. They contacted a contractor who painted and caulked the entire home as a part of routine maintenance, which seemed to resolve the staining.

81.     In October 2014, the Pledgers remodeled their unfinished basement. In the process, they identified two windows with severe damage on the interior wood. They had no

choice but to replace those basement windows to prevent further damage to their home. At the time, the Pledgers believed the problem was isolated to these basement windows.

82.     In June 2016, the Pledger's noticed damage to the exterior trim below each of the three levels of the seven (7) family room windows overlooking the deck as they prepared to have the deck cleaned and painted. Upon pulling the exterior trim off to perform another replacement, it quickly became apparent that there was significant damage to the underlying structure.

83.     At that time, the Pledgers hired a contractor who exposed a section of the wall beneath the bottom windows and discovered severe rot in the 2x6 stud framing of the load-bearing wall. Since then, multiple contractors have indicated the sill plate has likely been compromised. If the sill plate has been compromised, the contractors each informed the Pledgers that entire wall must be replaced. The full extent of the damage cannot be identified until the deck is removed and the entire sill plate exposed.

84.     In July 2016, the Pledgers inspected the remaining windows and discovered widespread water damage throughout their home as a direct result of the defective windows.

85.     There is evidence that the attic window has leaked progressively despite having been caulked and sealed numerous times as part of the homeowner's ordinary maintenance. Additionally, there is evidence that two (2) large picture windows on the stair landings have also leaked and caused damage to the ceiling and damage the trim below the windows.

86.     The Pledgers contacted a representative from the now defunct general contractor, Trueberry Group ("Trueberry"), to notify them of the damage.

87.     The Trueberry representative informed the Pledgers that they stopped installing Windsor windows sometime after they completed the Pledgers' home, and that the company had tremendous issues with Windsor's windows leaking. Trueberry's former VP of Construction and

Warranty confided to the Pledgers upon inspection of the damage in June 2016 that Trueberry had engaged Windsor to resolve the issues it was experiencing with numerous other homeowners' Windsor windows. After months of field testing and working with Windsor to resolve the issues in other neighborhoods, Trueberry decided to use a different window manufacturer moving forward.

88.     Currently, the Pledgers have observed thirteen (13) additional windows with *visible* signs of damage. There is likely additional latent damage that cannot be seen due to damage being obscured by the window and adjacent components.

89.     The Pledgers noticed that the majority of the windows in the house have increasingly worsened and begun allowing air intrusion since they originally purchased the home. In some cases, the wind can be heard and felt blowing through and around the windows. Exterior trim around multiple windows has been replaced because of rot where the trim rotted from the underside.

90.     The Pledgers have obtained three (3) separate quotes from contractors, each of which estimate at least $20,000.00 to begin performing work. The Pledgers have been told the total estimate of the damage cannot be determined until the deck has been removed which will permit the adjacent exterior cladding to be removed exposing the sill plate.

91.     The Pledgers filed a warranty claim with Windsor regarding the issues noted herein. Windsor has rejected the Pledgers' claim as outside of the applicable warranty period.

92.     Due to the representations of Defendants, including specifications, brochures, warranties, and other materials, the Pledgers and their builder believed that the Windows were of superior quality and free of defects. Based upon their reliance on Windsor's fraudulent representations of quality and suitability for installation in their home, the Pledgers had no

reason to suspect that their windows suffered from latent defects and latent damage, which manifested during the warranty period, but went unnoticed until the warranty had expired.

93.     After the Pledgers performed research on the internet, they discovered that numerous other homeowners experienced the same or similar problems as they had.

94.     The defects and damage has resulted in a significantly reduced service life of the Windows, which at a minimum should be 20-25 years based on ASTM E2136.   These windows failed within the 10-year warranty period, with the significant damage having been discovered well before 20-25 years.

95.     Defendants knew or should have known that the defects in the windows would impair the service life of the windows.

## CLASS ALLEGATIONS

96.     Plaintiffs bring this action individually and as representatives of all those similarly situated pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4) are met with respect to the Classes (collectively, "Class" or "Classes") defined below:

### DAMAGES CLASS

All persons and entities in the State of Ohio who are current or former owners of a structure on which Defendants' Pinnacle and Legend Series windows are installed.

### NATIONAL INJUNCTIVE RELIEF CLASS

All persons and entities in the United States, who own or owned homes in which Defendants' wood clad windows are installed.

Excluded from the Classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants and any entity in which Defendants have a controlling interest or that has a controlling interest in Defendants' companies and their legal

17

representatives, assigns, and successors of Defendants; and (c) all persons who properly execute and file a timely request for exclusion from the Classes.

Plaintiffs proposes that the Class be divided into subclasses if and as necessary to align Class interests.

97. The Classes are composed of thousands or more persons geographically dispersed throughout the State of Ohio and the Country, the joinder of whom in one action is impractical. Moreover, upon information and belief, the Classes are ascertainable and identifiable from Defendants' sales records, distributor records, identifying marks on the Windows, and AAMA labels.

98. The critical questions of law and fact common to the Classes that will materially advance the litigation is whether the Windows are inherently defective at the time they leave the factory, causing damage to Plaintiffs and Class Members' homes, contrary to the representations of Defendants and the expectations of the ordinary homeowner.

99. Additional questions of law and fact common to the Classes that exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes include the following:

a) Whether Defendants were negligent in their design and manufacture of the Windows;

b) Whether the Windows contain design and manufacturing defects;

c) Whether the Windows have not performed or will not perform in accordance with the reasonable expectations of ordinary consumers; and industry standard defined useful life of 20-25 years;

d) Whether Defendants knew or should have known about the Window defects;

e) Whether Defendants concealed from consumers and/or failed to disclose to consumers the defects;

f)    When Defendants knew or should have known about the defects;

g)    Whether Defendants concealed and/or failed to disclose the defective condition of the Windows to consumers;

h)    Whether Defendants' warranties are unconscionable and void *ab initio*;

i)    Whether Defendants breached their express warranty that the Windows were free of defects in material and workmanship;

j)    Whether Defendants breached implied warranties of merchantability by designing, manufacturing and selling defective Windows; were not fit for the ordinary purpose of exterior windows; and did not conform with the representations, promises, and affirmations Defendants made concerning the Windows;

k)    Whether Defendants' limited warranty contained limitations, exclusions, and disclaimers such as to cause it to fail of its essential purpose;

l)    Whether Plaintiffs and Class Members are entitled to compensatory damages;

m)    Whether Plaintiffs and the Class Members are entitled to replacement of their defective Windows with non-defective windows, and damages related to loss of use;

n)    Whether Plaintiffs and the Class Members are entitled to restitution and/or disgorgement;

o)    Whether Defendants falsely advertised and marketed its products to consumers;

p)    Whether the Windows conform to the applicable Ohio building codes, and industry and testing standards;

q)    Whether the Windows damage other property within Plaintiffs' and Class Members' homes;

r)    Whether Defendants concealed the defective nature of the Windows;

s)    Whether Defendants' limited warranty adequately disclaimed its liability;

t)    Whether Plaintiffs are entitled to prejudgment interest, attorneys' fees, and costs from Defendants; and

u)   Whether Defendants' conduct was negligent, reckless, willful, wanton, intentional, fraudulent or the like, entitling Plaintiffs and Class Members to statutory or punitive damages from Defendants.

100.   Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, warranting and selling the defective Windows and Defendants' conduct in concealing the defects in the Windows to owners, contractors, developers, and suppliers.

101.   Plaintiffs will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class given that Plaintiffs are members of the Class they also seek to represent. Plaintiffs have retained counsel experienced and competent in product liability, complex litigation, and consumer class actions.

102.   This case is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable.

103.   Should individual Class Members be required to bring separate actions, this Court and/or courts throughout Ohio would be confronted with hundreds if not thousands of lawsuits clogging the court system, while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will lead to judicial inefficiency, and undue delay and expense to all parties and the court system, this class action allows for a single adjudication, judicial efficiency, and comprehensive supervision by a single court.

104. Moreover, Plaintiffs does not foresee any difficulty in the management of this action as a class action and the amount of money at stake for each Class Member is not sufficient for each member to hire his or her own counsel, engineering and damage experts, or to incur additional out of pocket expenses to bring their own action.

## EQUITABLE ESTOPPEL
(Statute of Limitations)

105. Plaintiffs and Class Members are within the applicable statute of limitations for the claims presented hereunder because Plaintiffs and Class Members did not discover the defect, and could not have discovered the latent defects sooner than when they put Defendants' on notice of defects and damages.

106. Due to the concealed location of deterioration and other leak locations, Plaintiffs are often unaware of the wood rot, degradation, and other failures until the end or expiration of Defendants' warranty period.

107. Observation of damage at a small number or fraction of Windows could not have put Plaintiffs or Class Members on notice that *all* windows were suffering from design or manufacturing defects.

108. Defendants made omissions and misrepresentations that precluded Plaintiffs and class members from suspecting that their windows contained defects and were manifesting damage prior to the expiration of the 10-year warranty, or before the end of the reasonably expected service life of 20-25 years.

109. Defendants represent on their website to Plaintiffs and the public at large that defects are "rare."

110.    Plaintiffs and Class Members relied on those representations in attempting remedies other than filing suit against Defendants, and incurred significant expense in repairing the wrong building components.

111.    Defendants are aware, or should have been aware of the defects because of the numerous warranty claims and complaints alleging similar defects and asserted against them throughout the United States, including numerous other lawsuits relating to the same Windows.

112.    Defendants are estopped from relying on any statutes of limitation or repose by virtue of their affirmative misrepresentations and their acts of concealment, which include Defendants' concealment from Plaintiffs, Class Members, and the general public that their Windows were and are defective, while continually marketing the Windows as a durable, suitable, and even superior product.

113.    Defendants had a duty to adequately investigate warranty claims, verify the representations made to Plaintiffs and Class Members with regard to the cause of damage suffered, and not misrepresent the cause of such damage.

114.    Defendants had a duty to disclose that their Windows were defective, unreliable, and inherently flawed in design and/or manufacture.

115.    Defendants had a duty to acknowledge damage to homeowner's windows and homes were a result of the Windows themselves.

116.    Plaintiffs and Class Members had no knowledge of, and no reasonable way of discovering, the latent defects found in Defendants' Windows at the time they purchased the product or their homes, residences, buildings, and other structures.

117.    Defendants did not notify, inform, or disclose to Plaintiffs and Class Members that there were defects in the Windows, or that damage caused to the Windows or homes were caused by defects.

118.    Because Defendants failed in their duties to investigate, verify, provide accurate representations regarding warranty claims, and notify Plaintiffs and Class Members that their product was defective, the statute of limitations should be tolled on Plaintiffs and Class Members' claims.

## EQUITABLE ESTOPPEL
(Warranty Limitations and Exclusions)

119.    Defendants are estopped from relying on any warranty limitation or disclaimer as a defense to Plaintiffs and Class Members' claims.

120.    By virtue of Defendants' acts, the Windows installed in Plaintiffs' and Class Members' residences have not lived up to Defendants' warranties or representations, and given the defective condition of the Windows and the premature deterioration of the Windows, the Windows are significantly less valuable than what was purchased.

121.    Defendants knew or should have known that their Windows were defective in design and/or manufacture, and that said Windows were not fit for their ordinary and intended use, were not merchantable, and failed to perform in accordance with representations made, marketing materials and warranties disseminated by Defendants or with the reasonable expectations of ordinary consumers such as Plaintiffs and Class Members.

122.    In fact, Defendants' warranty even purports to disclaim any performance grade (identifying whether the Window complies with applicable building codes) indicated by the labels attached to the Windows.

123. Accordingly, any warranty provided by Defendants fails its essential purpose because it purports to warrant that the Windows will be free from defects for a prescribed period of time when, in fact, said Windows fall far short of the applicable warranty period.

124. Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available under Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy.

125. As a result, any time limitations, exclusions, or disclaimers, which restrict the remedies encompassed within Defendants' warranties, are unconscionable and unenforceable, and, therefore, Defendants are estopped from relying on the same.

## COUNT I
### (Negligence)

126. Plaintiffs reallege and incorporate each of the preceding allegations as though fully set forth herein.

127. Defendants were under a duty to exercise reasonable care to test, design, manufacture, warranty, market and distribute the Windows for their intended use.

128. Defendants breached their duty and were negligent in its testing, designing, warranting, manufacturing, distributing and/or marketing of its Windows as described herein.

129. Defendants knew or should have known that the Windows were defective, that they would fail prematurely, that they contained a defect which resulted in a reduced service life, that they were not suitable as an exterior product and that they otherwise did not conform to Defendants' warranties and representations.

130.    Because of Defendants' negligence, Plaintiffs and the Class suffered damages, including but not limited to damage to underlying structures or adjoining property caused by the deterioration or failure of the Windows, and any other compensatory or consequential damages.

131.    Plaintiffs and the Class have suffered damages in the need to remove and replace the Windows.

132.    As a direct, proximate, reasonably probable and foreseeable consequence of Defendants' negligent acts and/or omissions in connection with its testing, design, manufacture and distribution of their Windows, Plaintiff and the Class Members have suffered and will continue to suffer loss and damage to their residences, structures, and property.

## COUNT II
### (Ohio Revised Code §2307.71 et seq.)

133.    Plaintiffs reallege and incorporate each of the preceding allegations as though fully set forth herein.

134.    Defendants conduct violates the Ohio Products Liability Act, Ohio Rev. Code § 2307.71 et seq.

135.    Defendants are the manufacturers of the Windows.

136.    The Windows are products, and are discrete and distinguishable from the structure on which they were installed.

137.    Defendants defectively manufactured, designed or constructed the Windows and are liable under the Ohio Products Liability Act for the defects in its manufacture and construction.

138.    Defendants defectively designed or formulated the Windows and are liable under the Ohio Products Liability Act for defects in its design or formulation.

139.     Defendants did not supply adequate warnings or instructions regarding deficiencies, leaking, premature deterioration, and reduced service life of the Windows, as well as the attendant risk of harm that such deficiencies and deterioration poses to the underlying structure and other adjoining property, and is liable under the Ohio Products Liability Act for inadequate warning or instruction

140.     The Windows do not conform to Defendants' representations about the Windows, including but not limited to Defendants' statements regarding the durability of the Windows, compliance with building codes and standards, and its anticipated useful life.

141.     Defendants are liable under the Ohio Products Liability Act for failure of the Windows to conform to the representations made by Defendants.

142.     Because of Defendants violations of the Ohio Products Liability Act, Plaintiffs and the Class suffered damages, including but not limited to any damage to underlying structures or adjoining property caused by the deterioration or failure of the Windows, and any other compensatory or consequential damages. Plaintiffs and the Class reserve their right to seek all damages available by statute or law.

143.     Plaintiffs and the Class demand judgment against Defendant for an amount to be determined at trial.

## COUNT III
**(Violation of Ohio Consumer Sales Practices Act)**

144.     Plaintiffs incorporate by reference each paragraph of this Complaint as if set forth fully here, and further allege as follows.

145.     Defendants' conduct violates the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 et seq.

146.     For the purposes of this count, Defendants are suppliers of the Windows.

147.    Plaintiffs and other original owners acquired Defendants' warranty as part of the purchase or construction of the home.

148.    Consistent with Defendants' representations as to the transferability of its 10-year warranty, Defendants' assigned or transferred the services and benefits arising under their warranty to subsequent purchaser class members upon acquisition of the home.

149.    Because the Windows are installed in their personal residence, Plaintiff acquired the Windows primarily for personal, family, or household purposes.

150.    Defendants committed unfair or deceptive acts and practices through misrepresentations about the durability and reliability of the Windows, its suitability and effectiveness, and its anticipated useful life, among other representations. These representations were deceptive in that:

a. Defendants represented that the Windows had uses, benefits, or performance characteristics that it does not have.

b. Defendants represented that the Windows were of a particular quality or grade when it was not, or that it met a particular standard when it did not.

151.    Defendants committed unfair or deceptive acts and practices through misrepresentations about the operation of its warranties. These include, but are not limited to, representations discounting the effect or operation of express warranties in its advertising and marketing literature; representations regarding the institution or effect of purported "limited warranties"; and representations that obfuscated the duration of the warranty and the scope of warranty coverage.

152.    Defendants engaged in unconscionable acts and practices by continuing to market the Windows after it knew or had reason to know the Windows were defective.  Because the

Windows were not suitable for its ordinary use, Defendant had reason to know that:

      a.    The Windows were marketed and priced as superior residential products, compared to similar residential windows;

      b.    Plaintiffs and Class members would not substantially benefit from the Windows;

      c.    Defendants knowingly made misleading statements of opinion, upon which Plaintiffs and Class members were likely to rely to their detriment.

153.    Because of Defendants' violations of the Ohio Consumer Sales Protection Act, Plaintiff and the Class suffered damages, including but not limited to any damage to underlying structures or adjoining property caused by the deterioration or failure of the Windows, and any other compensatory or consequential damages.

154.    Plaintiffs and the Class demand judgment against Defendants for an amount to be determined at trial.

## COUNT IV
### (Breach of Express Warranty)

155.    Plaintiffs, individually and on behalf of all others similarly situated, re-alleges and incorporates by reference all foregoing allegations as though fully set forth herein.

156.    After putting their Windows into the stream of commerce, Defendants expressly represented and warranted that the Windows were appropriate for their intended use and were free from defects and that they conformed to all applicable building codes, and industry and testing standards.

157.    Specifically Defendants provided that their Windows and components would "free from defects in materials and workmanship which significantly impair their operation and proper usage."

158.    The express warranty is a warranty of future performance for a time period of no less than 10-years.

159.    Defendants entered into contracts with Plaintiffs, Class Members, retailers, builders, suppliers and/or contractors to sell Windows to be installed at Plaintiffs and Class Members' properties.

160.    Plaintiffs and Class Members were intended third-party beneficiaries of the contract between Defendants and Plaintiffs and Class Members' respective builders.

161.    The representations and warranties made by Defendants in marketing and selling their Windows formed part of the basis of the bargain between Defendants and the purchasers of the Windows at the time of the sale.

162.    Plaintiffs and other Class Members selected and purchased the Windows being installed in their homes.  Additionally, the typical purchase agreement for the construction or sale of residences or structures contained provisions transferring or assigning the manufacturers' warranties, including window warranties. Such provisions are valid transfers and assignments, and the transferred and assigned warranties formed part of the basis of the bargain at the time the home was purchased.

163.    Further, Defendants' warranty expressly provides for transfer to a subsequent purchaser of a home.

164.    Defendants' warranty certifies that they will replace or repair components of their products found to be defective for at least 10-years.

165.    Upon information and belief, all of Defendants' written warranties applicable to Class Members contain the same or similar provisions.

166.    Through their written warranties, brochures, marketing materials, website, and other representations regarding the performance, durability, and quality of the Windows, Defendants created express warranties for the benefit of Plaintiffs and Class Members.

167.    Thus, Defendants' express warranties and representations are applicable to the Windows installed in Plaintiffs' and Class Members' residences and/or structures.

168.    Specifically, Defendants expressly warranted to Plaintiffs and Class Members that the Windows purchased by Plaintiffs and Class Members were free from defects in materials and workmanship that substantially impair their operation or performance and that they would last at least ten years.

169.    However, despite Defendants' assurances, as described in detail *supra*, the Windows contain the aforementioned defects and do not conform to all applicable building codes, industry and testing standards, and are not free from defects.

170.    These aforementioned defects are present when the Windows leave Defendants' control.

171.    Defendants breached the express warranty by selling Windows that were defective and not reasonably fit for their ordinary and intended purpose and did not conform to Defendants' express representations and/or warranties. Further, contrary to Defendants' representations and warranties, the Windows were not free from design and material defects for at least 10-years.

172.    By their conduct and defective products, Defendants have breached their express warranty with Plaintiffs and members of the Class.

173.     In addition, Defendants have breached their express warranties by not providing Plaintiffs and Class Members with Windows that were free from defects and/or by suppressing warranty claims.

174.     Defendants' written warranties are also unconscionable and fail their essential purpose because they purport to warrant that the Windows will be free from manufacturer defects for at least ten years when, in fact, the Windows fall far short of the applicable warranty period. To the contrary, due to the leakage in the Windows, Defendants' Windows begin failing after only a few years' (or less) use.

175.     Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available in Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy. Further, the warranty is inadequate because by its 10-year limitation alone, Defendants seeks to reduce the reasonable expected life of the product.

176.     Defendants breached their warranties by failing to adequately investigate warranty claims, or otherwise denying claims where the latent damage wasn't discovered until after the 10-year warranty despite the damage beginning to manifest within the warranty period.

177.     Defendants breached their warranties by misrepresenting the cause of damage to Plaintiffs and Class Members' homes.

178.     Defendants breached their warranties by failing to adequately repair or replace under the terms of the warranties.

179.     Plaintiffs and Class Members put Defendants on notice of their warranty claims and the issues with their Windows.

180.     Defendants breached their warranties by failing or refusing to repair or replace the Windows or damage caused by the defective Windows.

181.     Plaintiffs and Class Members adequately met all pre-suit notice requirements for their warranty claims.

182.     Defendants have denied, failed to pay in full, and/or failed to respond to warranty Claims.

183.     Accordingly, the limitations on remedies and the exclusions in Defendants' warranties are unconscionable and unenforceable.

184.     As a result of Defendants' breaches of express warranties, Plaintiffs and Class Members have suffered actual damages in that they purchased the Windows, and also homes, residences, buildings, and other structures containing defective Windows that have failed or are failing prematurely due to leakage and premature degradation of the wood components. This failure has required or is requiring Plaintiffs and Class Members to incur significant expenses in repairing or replacing their Windows. Repair and replacement is necessary to remedy the damage to the homes, and to prevent on-going and future damage to the underlying structures or interiors of Plaintiffs and Class Members' residences.

185.     Thus, as a direct and proximate result of Defendants' breach of the express warranty on the Windows, Plaintiffs and Class Members have suffered actual and consequential damages.

## COUNT V
### (Breach of Contract)

186.     Plaintiffs, individually and on behalf of all others similarly situated, re-allege and incorporate by reference all foregoing allegations as though fully set forth herein.

187.     Defendants' Limited Warranty is a contract offered to, and accepted by Plaintiffs and Class Members in conjunction with the purchase of the Windows and homes.

188.     Implied in Defendants' Limited Warranty is a covenant of good faith and fair dealing.

189.     Payment for the Windows and homes wherein the Windows are installed, was made in consideration for high quality windows and the promise of repair and replacement services under the Limited Warranty.

190.     The Limited Warranty provided for, *inter alia*:

   a) That the Windows would be free from defects in materials and workmanship;

   b) The Windows come with coverage against insulated glass seal failures for 20 years and coverage for workmanship and materials for 10 years; and

   c) In the event of a component failure under Defendants' 10-year warranty, Defendants will provide no-charge replacement parts, under the terms of the warranty, against defects under normal conditions for 10 years.

191.     Plaintiffs and Class Members satisfied all terms of the Limited Warranty by payment, claims procedure compliance, and meeting all other requirements in order to obtain repair and replacement.

192.     Defendants failed to comply with the terms of the Limited Warranty by failing to provide non-defective Windows, which were installed in Plaintiffs and Class Members homes.

193.     Defendants failed to comply with the terms of the Limited Warranty by failing and/or refusing to adequately repair or replace defective Windows with non-defective windows or components.

194.     Defendants' conduct at all times relevant hereto constitutes a breach of contract, and breach of their duty of good faith and fair dealing.

195.     Defendants' intentionally and purposely conducted themselves in a manner that had the effect of destroying or injuring the right of Plaintiffs and Class Members' ability to receive the fruits of the contract, including:

     a)  Providing Windows that Defendants knew were defective;

     b)  Failing or refusing to repair or replace defective Windows or components;

     c)  Concealing known defects;

     d)  Denying, or otherwise failing or refusing, to respond to warranty claims without adequately investigating the cause of reported damage; and

     e)  Other bad faith or unfair conduct that may be uncovered through discovery.

196.     Defendants' conduct constitutes evasion of the spirit of the bargain; lack of diligence in responding to or investigating warranty claims; willful rendering of imperfect performance; abuse of Defendants' power with regard to specific terms, exclusions and limitations; and failure to cooperate in Plaintiffs and Class Members' abilities to comply with claims procedures.

197.     Plaintiffs and Class Members have been damaged by Defendants' breaches of contract and implied covenant of good faith and fair dealing.

198.     By virtue of the foregoing, Plaintiffs and Class Members are entitled to an award of damages and other appropriate relief, including attorney's fees.

## <u>COUNT VI</u>
### (Fraudulent Misrepresentation)

199.      Plaintiffs, individually and on behalf of all others similarly situated, re-alleges and incorporates by reference all foregoing allegations as though fully set forth herein.

200.     Defendants falsely and fraudulently represented to Plaintiffs, the Class Members, purchasers, and consumers in general that Defendants' Windows would be free from defects and fit for their customary and normal use.

201.     Defendants falsely represented to Plaintiffs, Class Members, purchasers, and consumers in general that the Windows were warranted against defects in material and workmanship when, in fact, the limited warranty was so limited as to prevent and preclude any warranty protection against the known defect in the Windows.

202.     Defendants falsely represented to Plaintiffs, Class Members, purchasers, and consumers in general that the Windows were superior products, and were building code, industry standard and testing compliant.

203.     Defendants falsely represented to Plaintiffs, Class Members, and other purchasers that the Windows were suitable exterior building products, and could withstand the climates at the locations where the Windows were distributed and installed.

204.     When Defendants made the aforementioned representations, they knew or should have known those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

205.     The aforementioned representations were made by Defendants with the intent to defraud and deceive Plaintiffs, Class Members and/or the consuming public, all of which evinced reckless, willful, indifference to the safety and welfare of Plaintiffs and Class Members.

206.     At the time the aforesaid representations were made by Defendants, Plaintiffs and the Class Members were unaware of the falsity of said representations and reasonably believed them to be true.

207. In reliance upon said representations, Defendants' Windows were installed and used on Plaintiffs and Class Members' properties, thereby causing Plaintiffs and the Class Members to sustain damages and injury to their property and/or to be at an increased risk of sustaining damage and injury in the future.

208. Defendants knew and were aware, or should have been aware, that their Windows were defective and not fit for their customary and normal use.

209. Defendants knew, or should have known, that Defendants' Windows had a potential to, could, and would cause severe damage and injury to property owners.

210. Defendants brought their Windows to the market and acted fraudulently, wantonly and maliciously, to the detriment of the Plaintiffs and the Class Members.

211. By reason of the foregoing, Plaintiffs and the Class Members suffered, and continue to suffer property loss, financial damage, and injury.

## COUNT VII
### (Fraudulent Concealment)

212. Plaintiffs, individually and on behalf of all others similarly situated, re-alleges and incorporates by reference all foregoing allegations as though fully set forth herein.

213. Defendants knew or should have known that the Windows were defective in design, were not fit for their ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials and warranties disseminated by Defendants nor the reasonable expectations of ordinary consumers.

214. Defendants fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs and the Class that the Windows were defective.

215. Defendants had exclusive knowledge of the defective nature of the Windows at the time of sale. The defect is latent and not something that Plaintiffs or Class Members, in the

exercise of reasonable diligence, could have discovered independently prior to purchase, because it is not feasible.

216.    Defendants had the capacity to, and did, deceive Plaintiffs and Class Members into believing that they were purchasing Windows free from defects.

217.    Defendants undertook active and ongoing steps to conceal the defect. Plaintiffs are aware of nothing in Defendants' advertising, publicity or marketing materials that disclosed the truth about the defect, despite Defendants' awareness of the problem.

218.    Defendants continued to conceal the defect by failing to acknowledge that the damage giving rise to warranty claims was caused by the Windows themselves; and

219.    The facts concealed and/or not disclosed by Defendants to Plaintiffs and the Class Members are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Windows from their builders.

220.    Defendants intentionally concealed and/or failed to disclose material factors for the purpose of inducing Plaintiffs and the Class to act thereon.

221.    Further, upon notification from homeowners about water intrusion, Defendants failed to inform Plaintiffs of the defect, misrepresented the cause of the damage, failed to otherwise respond to warranty claims, and failed to rectify the problem.

222.    Plaintiffs and the Class justifiably acted or relied upon the concealed and/or undisclosed facts to their detriment, as evidenced by their purchase of the Windows and subsequently, their inability to recognize that the Windows were defective until after the warranty expired.

223.    Plaintiffs and Class Members suffered property and financial loss in an amount to be proven at trial as a result of Defendants' fraudulent concealment and nondisclosure because:

a.  they would not have purchased the Windows on the same terms if the true facts concerning the defective Windows had been known;

b.  they paid a price premium due to the fact that they would be free from defects; and

c.  the Windows did not perform as promised. Plaintiffs also would have initiated this suit earlier had the defect been disclosed to them.

224.    By reason of the foregoing, Plaintiffs and Class Members suffered, and continue to suffer, property loss, financial damage and injury.

WHEREFORE, Plaintiffs, individually and on behalf of others similarly situated, pray for a judgment against Defendants as follows:

1.  For an Order certifying the Classes, pursuant to Fed. R. Civ. P. Rule 23, appointing Plaintiffs as representatives of the Classes, and appointing the law firms representing Plaintiffs as counsel for the Classes;

2.  For compensatory damages sustained by Plaintiffs and the Damages Class;

3.  For payment of costs of suit herein incurred;

4.  For both pre-judgment and post-judgment interest on any amounts awarded;

5.  For punitive damages;

6.  For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

7.  For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury on all causes of action so triable.

Dated: September 29, 2016          Respectfully submitted,


s/Jack Landskroner
Jack Landskroner (0059227)
Drew Legando (0084209)
**Landskroner Grieco Merriman, LLC**
1360 West 9th Street, Suite 200

Cleveland, Ohio 44113
P. 216 / 522-9000
F. 216 / 522-9007
E. jack@lgmlegal.com
   drew@lgmlegal.com


s/ Panagiotis "Pete" V. Albanis
Panagiotis "Pete" V. Albanis
**Morgan & Morgan – Complex Litigation Group**
12800 University Drive Suite 600
Fort Myers, FL 33907
Telephone: (239) 432-6605
Facsimile: (239) 433-6836
PAlbanis@forthepeople.com
Florida Bar No. 0077354